Donald F. BAKER, Plaintiff-Appellee,

v.

Henry WADE, District Attorney of Dallas County, Texas, Etc., et al., Defendants,

Danny E. Hill, 47th District Attorney, Defendant-Appellant.

No. 82–1590.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1984.

Rehearing En Banc Granted Jan. 28, 1985.

William Charles Bundren, Roderic G. Steakley, Dallas, Tex., for Hill.

Mark White, Atty. Gen. of Tex., Douglas M. Becker, Theresa Ann Kraatz, Asst. Attys. Gen., Austin, Tex., for State of Tex.

Donovan Campbell, Jr., Dallas, Tex., for amicus Doctors Against A.I.D.S.

James C. Barber, Dallas, Tex., for plaintiff-appellee.

Thomas J. Coleman, Jr., Houston, Tex., for amicus Texas Human Rights Foundation.

Abby R. Rubenfeld, Nan D. Hunter, New York City, for amicus Lambda Legal Defense & Educ. Fund, Inc.

Leonard Graff, San Francisco, Cal., for amicus Nat. Gay Rights Advocates.

Robert R. Murdoch, Los Angeles, Cal., for amicus Medical Advisory Council of Aids Project/Los Angeles.

Before GOLDBERG, RUBIN and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

One who performs "deviate sexual intercourse" with another person of the same sex in Texas is guilty of a misdemeanor. A homosexual sued a class of all Texas district, county, and city attorneys, challenged the constitutionality of this statute, and the State, represented by Texas' Attorney General, intervened to defend the statute. After the district court, 553 F.Supp. 1121, held the statute unconstitutional as violating both the Texas and the United States constitutions, the State and the original class representatives declined to appeal. One class member, a Texas county attorney, moved to intervene as of right to prosecute this appeal. A motions panel granted his motion to intervene. Having now had the benefit of full briefing, and having more fully considered the matter, we hold that the aspiring appellant did not have the right to intervene and that the Attorney General of Texas, who chose not to appeal, properly represented the interests of the State. We, therefore, dismiss the appeal.

I.

Donald F. Baker, a homosexual, sought a declaration that § 21.06 of the Texas Penal Code is unconstitutional. The statute, captioned "Homosexual Conduct," provides:

A person commits an offense if he [or she] engages in deviate sexual intercourse with another individual of the same sex.

"Deviate sexual intercourse" is defined by statute, in pertinent part, as "any contact between any part of the genitals of one person and the mouth or anus of another person." [1] Violation of § 21.06 is a "Class C misdemeanor," punishable only by "a fine not to exceed $200." [2] Adopted in 1974 as part of the first comprehensive reform of the state's criminal laws,[3] the

---

1. Tex.Penal Code Ann. § 21.01 (Vernon 1974).

2. Tex.Penal Code Ann. § 12.23 (Vernon 1974).

3. In its opinion, the district court traced the history of Texas laws proscribing acts deemed sexually deviate. In 1860, Texas prohibited "the abominable and detestable crime against na-

statute proscribes both public[4] and private[5] homosexual conduct between consenting adults.

The complaint named as defendants Henry Wade, the District Attorney of Dallas County, and Lee Holt, City Attorney of Dallas, Texas; it also sought certification of a defendant class, under Fed.R.Civ.P. 23(b)(2), consisting of "all district, county and city attorneys in the State of Texas responsible for the enforcement of Texas Penal Code Ann. § 21.06." After the State of Texas, represented by its Attorney General, intervened, defendant Holt advised approximately forty district, county, and city attorneys that, if they wished to intervene, they should do so "well in advance of the class certification hearing." Neither Hill's predecessor in office, Thomas A. Curtis, District Attorney of Potter County, Texas, nor any of the other attorneys who received notice chose to intervene. The parties then agreed that the defendant class was proper, and the court entered a consent certification order naming Holt and Wade as class representatives.

After a trial, the district court, in a comprehensive opinion, held § 21.06 unconstitutional as a violation of Baker's fundamental right of privacy and his right to equal protection of the law. The court enjoined the defendants from enforcing the statute. The State of Texas filed a notice of appeal and then withdrew it, and neither of the class representatives appealed. Thereaft-er, Danny Hill, who had become District Attorney of Potter County, filed both a motion to set aside the judgment and to reopen the evidence, and a motion to intervene and to substitute class representatives. The Dallas Doctors Against AIDS, which was neither a named defendant nor a class member, also sought to intervene. The district court denied all of these motions. Hill later filed a petition for writ of mandamus in the Supreme Court of Texas in order to compel the Attorney General to appeal the district court's decision, but his petition was denied. A panel of this court then granted Hill's motion to intervene on appeal.

In addition to asserting the constitutionality of the statute, Hill attacks Baker's standing to sue and the justiciability of his claim. Baker counters that Hill should not be heard because his intervention is improper under Fed.R.Civ.P. 24(a)(2). The threshold question is the propriety of Hill's intervention. The failure of Hill's efforts to intervene would leave us without an appellant and consequently without authority to consider any of the other issues. Although the motions panel granted Hill's motion to intervene, its ruling was made without the benefit of complete briefing and without opportunity to consider the relationship of the aspirant intervenor's interest to the substantive issues in the case. Its ruling, therefore, is perforce provisional and may be reconsidered by the oral argu-

---

ture," and made it punishable by five to fifteen years imprisonment. This statute did not condemn oral sex, but proscribed only anal sex and bestiality. *See Pruett v. State,* 463 S.W.2d 191 (Tex.Crim.App.1971), appeal dismissed for want of substantial federal question, 402 U.S. 902, 91 S.Ct. 1379, 28 L.Ed.2d 643 (1971).

In 1943, the Texas legislature enacted a statute prohibiting "carnal copulation" with human or beast, condemning all oral and anal sex and bestiality. The offense was punishable by imprisonment for two to fifteen years. For the next thirty-one years, it was a felony for anyone in Texas—married or unmarried males or females, or homosexuals of either sex—to engage in oral or anal intercourse, in public or in private. This statute was held unconstitutional by a three-judge federal court, *Buchanan v. Batchelor,* 308 F.Supp. 729 (N.D.Tex.1970), *vacated and remanded on other grounds sub nom.,* *Wade v. Buchanan,* 401 U.S. 989, 91 S.Ct. 1221, 28 L.Ed.2d 526 (1971), but the Texas Court of Criminal Appeals declined to follow this decision and held that the statute was constitutional, *Pruett v. State,* 463 S.W.2d 191 (Tex.Crim.App. 1971).

4. Insofar as § 21.06 condemns public homosexual conduct, it overlaps § 21.07 of the Texas Penal Code. This section, entitled "Public Lewdness," proscribes "an act of deviate sexual intercourse" as well as other sexual acts performed "knowingly ... in a public place or, if not in a public place ... [if the person is] reckless about whether another is present who will be offended or alarmed by his [or her] act ...."

5. Section 21.06 is not limited to public conduct.

ment panel to which the case is assigned after complete briefing. The court may then on occasion reach a different conclusion, and it is free to follow the course chosen after receiving more complete information.[6]

## II.

■ Hill sought to intervene under Fed.R.Civ.P. 24(a)(2). That provision bestows a right to intervene only if each of the following conditions is satisfied:

(1) the application for intervention must be timely;

(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest;

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.[7]

If the applicant for intervention fails to establish any one of these requirements, then he may not intervene of right.[8] Hill contends that his official capacity as District Attorney for Potter County, his membership in the defendant class, and the failure of the class representatives to appeal justify his intervention on the ground of inadequate representation. Although Baker disputes the timeliness of Hill's post-judgment attempt to intervene,[9] we need address that issue only if the other three requirements for intervention of right are satisfied. Because the Attorney General of the State of Texas appeared on behalf of the State to defend the constitutionality of § 21.06, and the class representatives also asserted its constitutionality, we first focus on whether Hill has demonstrated the existence of a personal interest that has not been adequately represented by the existing parties.

■ Although the 1966 amendment to Rule 24(a) liberalized the requirements for intervention as of right, the burden of establishing inadequate representation, however slight, remains on the applicant for intervention.[10] Even though this burden is satisfied if the applicant makes a minimal showing that representation of his interest may be inadequate,[11] "it cannot be treated as so minimal as to write the requirement out of the rule." [12] Thus, in this circuit, as in others, representation is presumed adequate unless the applicant alleges that the representatives engaged in collusion, nonfeasance, or had an interest antagonistic to his.[13] As we recently stated in *Bush v. Viterna*, "when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that

6. *EEOC v. Neches Butane Products Co.*, 704 F.2d 144, 147 (5th Cir.1983).

7. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.1984) (en banc) (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir.1978).

8. *Bush v. Viterna*, 740 F.2d 350, at 354 (5th Cir.1984); *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978).

9. An attempt to intervene only after judgment has been rendered does not of itself make the motion untimely. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 2465, 53 L.Ed.2d 423 (1977). The timeliness of the motion must be evaluated under the standards enunciated by us in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir.1977).

10. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686, 694 n. 10 (1972).

11. *Id.*

12. *Bush v. Viterna*, 740 F.2d 350, at 355 (5th Cir.1984).

13. *See, e.g., United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir.1977); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir.1973); *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978); *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 970, 973 (3d Cir.1982). *But see United States v. AT & T*, 642 F.2d 1285, 1293 (D.C.Cir. 1980) (burden is on opponent of intervention to show that representation is adequate); *cf.* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1909, at 524 (1972).

its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance."[14] A presumption of adequate representation also arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee,[15] whether a citizen or a subdivision of the state seeks to intervene.[16]

To assess both whether the presumption of adequacy was justified in this case and whether the Attorney General in fact adequately represented Hill's interest, we examine the nature of Hill's interest[17] and the interest of the State as represented by the Attorney General.

■ As an applicant for intervention, Hill must assert "an interest relating to the property or transaction which is the subject of the action" in order to satisfy the requirement of Rule 24(a)(2). This circuit

requires the asserted interest to be direct, substantial, and legally protectable[18]—"one which the *substantive* law requires as belonging to or being owned by the applicant."[19] Accordingly, the claim an applicant seeks intervention to assert must be one as to which he is the real party in interest under Fed.R.Civ.P. 17(a).[20] Hill's *standing* to participate,[21] and therefore the interest he may intervene to protect arises solely out of his official capacity as Potter County Attorney; the judgment binds him only in that role.[22] As a private person, he has no greater interest than any citizen of Texas, a private interest that would not support intervention. Hill's role as County Attorney, the duties of which are defined by *state law*,[23] circumscribes his official interest in this case.

■ In this attack on the facial unconstitutionality of a statute adopted by the

---

14. *Bush v. Viterna,* 740 F.2d 350, at 355 (5th Cir.1984) (quoting *International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978)).

15. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 525–29 (1972); *see also Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 689, 81 S.Ct. 1309, 1312–13, 6 L.Ed.2d 604, 609 (1961) (dictum).

16. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 970 (3d Cir.1982) (denying intervention by state legislators when the state attorney general was a party); *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738 (D.C.Cir.1979) (denying intervention by local water districts when state was already a party to the suit); *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501 (3d Cir.) (denying intervention by firemen and officers when the city was a party to the suit), *cert. denied sub. nom., Fire Officers Union v. Pennsylvania,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976).

17. *See Bush v. Viterna,* 740 F.2d 350, at 355 n. 9 (5th Cir.1984) (deciding sufficiency of interest for intervention is not required in order to determine adequacy of representation).

18. *New Orleans Public Service, Inc. v. United Gas Pipeline Co.,* 732 F.2d 452, 463 (5th Cir. 1984) (en banc); *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir.), *cert. denied sub nom., Trefina A–G v. United States,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *United States v. Perry County Board of Education,* 567 F.2d 277, 279 (5th Cir.1978).

19. *New Orleans Public Service, Inc.,* 732 F.2d at 464 (emphasis in original).

20. *Id.; Piambino v. Bailey,* 610 F.2d 1306, 1321 (5th Cir.), *cert. denied sub nom., Piambino v. Sylva,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980).

21. Hill is bound by his oath of office to enforce the State's laws. He is also subject to a contempt citation should he violate the district court's mandate. These two factors are sufficient to confer article III standing. *Compare Board of Education v. Allen,* 392 U.S. 236, 242 n. 5, 88 S.Ct. 1923, 1925 n. 5, 20 L.Ed.2d 1060, 1064 n. 5 (1968), *with Finch v. Mississippi State Medical Ass'n,* 585 F.2d 765, 773–74 (5th Cir.1978). The oath of office and the threat of a contempt citation, however, also show that the extent of Hill's, as opposed to any other citizen's, stake in this controversy is circumscribed by his official capacity as District Attorney for Potter County.

22. The judgment on its terms reaches only the named defendants and "the members of the class certified."

23. *See Piambino v. Bailey,* 610 F.2d at 1321; *United States v. 936.71 Acres of Land,* 418 F.2d 551, 556 (5th Cir.1969); *cf. Smuck v. Hobson,* 408 F.2d 175, 177–78 (D.C.Cir.1969) (en banc) (resignation of superintendent eliminated cogni-

state legislature and signed by the state governor, the state as a sovereign body politic was the real party in interest. The Texas Constitution provides that the Attorney General "shall represent the state in all suits and pleas in the Supreme Court of the State in which the State may be a party ... and perform such other duties as may be required by law." [24]  And Texas law mandates that "the Attorney General shall prosecute and defend all actions in the Supreme Court or the Courts of Civil Appeals in which the State may be interested." [25] In declaratory judgment actions challenging the constitutionality of a "statute, ordinance, or franchise, ... the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard." [26]  Texas law thus plainly designates the Attorney General as the official responsible for protecting the State's interest in litigation. [27]

▮ The laws of Texas vest in district and county attorneys the exclusive responsibility and control of criminal prosecutions and certain other types of proceedings. [28] We do not, however, have before us any issue concerning who is the proper representative of the state in a proceeding of that nature. The Texas Supreme Court has explained that the constitutional provisions governing the office of the Attorney General entrust important matters of statewide interest to that statewide officer. [29] The issue raised by this case is certainly of statewide interest; it presents only the question of the constitutional validity or

invalidity of a state law, determined solely on the face of that law and not as applied to any specific situation.

Our conclusion that the state's attorney general is presumptively an adequate representative of the state's interest takes further support from various federal provisions requiring notice to that official. For example, in federal court proceedings drawing into question the constitutionality of a state statute, the court must notify the state's attorney general and afford the state an opportunity to intervene on the constitutional issues. [30]  In addition, the provisions governing federal habeas corpus contemplate notice to the attorney general of the state having custody of the prisoner. [31]  This same reasoning led us to conclude that a state attorney general has the power to waive the requirement that a state prisoner exhaust his state remedies before seeking federal habeas corpus relief. [32]

This case does not require us to decide whether the Attorney General must be the exclusive representative of the state's interest nor does it require us to determine the issues that might be presented by an attack on the constitutionality of a statute as applied. Rather, we face the question whether intervention by a state's attorney is called for once the Attorney General has intervened to represent the interests of the state. The State as a sovereign then speaks in court with a single voice; litigation would be unmanageable were it possi-

zable interest necessary to intervene to appeal desegregation order).

24. Texas Const. art. 4, § 22.

25. Tex.Rev.Civ.Stat.Ann. art. 4395 (Vernon 1976).

26. Tex.Rev.Civ.Stat.Ann. art. 2524–1 § 11 (Vernon 1965).

27. See Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); see also Bullock v. Texas Skating Ass'n, 583 S.W.2d 888, 894 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.) (noting Attorney General's discretion "to decide whether to appeal a case in which the state had experienced an adverse judgment in the trial court.").

28. See Texas Const. art. 5, § 21; C.C.P. art. 2.01; State v. Gary, 163 Tex. 565, 359 S.W.2d 456, 458 (1962); Shepperd v. Alaniz, 303 S.W.2d 846 (Tex. Civ.App.1957, no writ).

29. Brady v. Brooks, 99 Tex. 366, 89 S.W. 1052, 1056–57 (1905). Brady's continuing vitality was noted in Magnolia Petroleum Co. v. State, 190 S.W.2d 581, 586 (Tex.Civ.App.1945, no writ).

30. 28 U.S.C. § 2403(b).

31. See 28 U.S.C. § 2252; 28 U.S.C. fol. § 2254, Rules 2(a), 4. See also 28 U.S.C. fol. § 2254, appendix of forms.

32. McGee v. Estelle, 722 F.2d 1206, 1212 (5th Cir.1984) (en banc).

ble for every district, county, or city attorney who differs with the State's position, as voiced by the Attorney General, to intervene in order to assert the unconstitutionality of a state statute the Attorney General seeks to defend or the constitutionality of a statute whose declared unconstitutionality he is willing to allow to remain unchallenged, each asserting perhaps not only a different position but a different legal theory supported by different evidence. The protraction of any such litigation might expose the State to legal fees and expenses of massive size if the opponent prevailed.[33]

■ The presumption of adequate representation is, therefore, warranted. Moreover, the representation was adequate in fact. The case was vigorously defended. Such interests as Hill had in defending the constitutionality of the statute were asserted both by the class representatives and the Attorney General, as intervenor. Indeed, their ultimate objective was precisely the same. Hill charges no collusion, nonfeasance, or interest antagonistic to his. Instead, he confines his allegations of inadequate representation to the named defendants' failure to appeal. Hill's argument on the merits is largely an attempt to shed what he alleges is new light on the constitutional issues, in the form of various affidavits and literature concerning sexually transmitted diseases. He failed to convince the district court that much of that evidence was newly discovered for the purposes of Fed.R.Civ.P. 60(b). Any attempt now to argue that the named defendants were derelict in failing to present it might be met with the answer that his intervention on that basis is untimely.[34]

Hill alleges no facts that would indicate that the decision not to appeal was based on collusion or that it represents anything other than a sound strategic assessment of the case's strengths and weaknesses. Indeed, because the constitutionality of the statute was defended not only by the class representatives but by the State of Texas through its Attorney General, a would-be intervenor must make a "very strong showing of inadequate representation" before he can prevail.[35]

Hill was content to rely on the efforts of others until the cause was lost and those who had hitherto fought the battle considered further litigation undesirable. He makes a desultory allegation that he was not given adequate notice of the pendency of the case, but the record shows that notice of the action was sent to each class member, including Hill's predecessor. Moreover, given the publicity attending this litigation, some of which appears in the record, it is extremely unlikely that a person in Hill's position was ignorant of important developments in the proceeding. "Notice would [have] add[ed] little or nothing."[36]

Hill relies on our decision in *Gonzales v. Cassidy*,[37] for the proposition that the named defendants' failure to appeal per se demonstrates their failure to guard the interests of the members of the class. Although that opinion contains dicta that may be read to support the view Hill espouses, the facts distinguish *Gonzales*. There the class representative simply deserted the class members whom he had the duty to protect. *Gonzales* was the culmination of a series of cases and appeals that resulted in a declaration that the state uninsured motorist law was unconstitutional, but only as applied to the single class representative. The representative won retroactive relief; but prospective as well as retroac-

---

**33.** *See, e.g.,* 42 U.S.C. § 1988.

**34.** *See Stallworth v. Monsanto Co.,* 558 F.2d 257, 264–66 (5th Cir.1977); *Jones v. Caddo Parish School Board,* 735 F.2d 923, 933–34 (5th Cir. 1984) (en banc).

**35.** 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 530–31; *see also* cases cited *supra* note 16; *cf. Associated Indus. of*

*Alabama, Inc. v. Train,* 543 F.2d 1159 (5th Cir. 1976) (attempted intervention by state's attorney general in action conducted by Environmental Protection Agency administrator).

**36.** 3B J. Moore & J. Kennedy, Federal Practice ¶ 23.55, at 23–441 (2d ed. 1972).

**37.** 474 F.2d 67 (5th Cir.1973).

tive relief were denied to all other class members. The representative, acting only in his own interest and disregarding the class issues, took his judgment and went home. Once the representative secured his judgment, his interest and that of the class diverged. We held that, because the representative had not adequately advanced the interests of the entire class, the judgment was not res judicata as to them. In the present case, intervention by the State provided advocacy of the State's interests and consequently Hill's official interest as prosecutor for the State. Hill makes no allegation that the representatives' interests diverged from his.

This is not a case in which the government's interests conflicted with those of an individual who asserts only his personal stake.[38] The Texas Attorney General has decided that the sovereign interests of the State are served by foregoing an appeal in this case. It should be neither Hill's province nor ours to question that judgment. As we have previously observed, "The Texas courts have held that the Constitution vests authority to enforce the rights of the state exclusively in the state's attorneys." [39]

### III.

Defendant class actions embody a potential for unfairness to absent class members because the *plaintiff* makes an initial choice of class representative.[40] Here, however, there is question of neither the competency nor the adequacy of these representatives and, more important, the true interest at stake, that of the State of Texas in the constitutionality of its duly enacted legislation, was defended by the State's own spokesman and chief legal officer. Because Hill has failed to allege any facts

that impugn either the Attorney General's or the class representatives' discharge of that responsibility, apart from their decision not to appeal, we DISMISS Hill's petition.

---

**38.** *See, e.g., Trbovich v. United Mine Workers,* 404 U.S. 528, 538–40, 92 S.Ct. 630, 636–37, 30 L.Ed. 686, 694–96, (1972) (allowing intervention by union member to protect his interest because the Secretary of Labor protects rights of union members and the interests of the public in democratic elections).

**39.** *McGee v. Estelle,* 722 F.2d 1206, 1212 n. 18 (5th Cir.1984) (en banc).

**40.** "[I]t is a strange situation where one side picks out the generals for the enemy's army." Z. Chafee, Some Problems of Equity 237 (1950); *see generally* Note, Certification of Defendant Classes Under Rule 23(b)(2), 84 Colum.L.Rev. 1371, 1385–87 (1984).