UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 94-20138

MARY MOORE, ET AL.,

Plaintiffs-Appellees,


VERSUS

DAN MORALES, Attorney General, Et Al.,

Defendants,

DAN MORALES, Attorney General,

Defendant-Appellant.
**********************************************************

ADRIANE ANDERSON, ETC.,

Plaintiff-Appellee,


VERSUS

JOHN B. HOLMES, JR., ET AL.,

Defendants,

DAN MORALES, Attorney General,

Defendant-Appellant.
**********************************************************
DIRECT MAIL MARKETING, INC., ET AL.,

Plaintiffs-Appellees,


VERSUS

JOHN VANCE, ET AL.,

Defendants,

DAN MORALES, Attorney General,

Intervenor-Defendant-Appellant.

```
*************************************************************
           INNOVATIVE DATABASE SYSTEMS, ET AL.,

                                     Plaintiffs-Appellees,


                           VERSUS

                    DAN MORALES, ET AL.,

                                              Defendants,

                        DAN MORALES,

                                     Defendant-Appellant.
*************************************************************
               DAVID O. CHAMBERS, ET AL.,

                                     Plaintiffs-Appellees,


                           VERSUS

                   STEVEN HILBIG, ET AL.,

                                              Defendants,

                        DAN MORALES,

                         Intervenor-Defendant-Appellant.
```

_____

**Appeal from the United States District Court
for the Southern District of Texas
(CA-H-93-2170, c/w 93-2499, 93-2699, 93-2700 & 93-2701)**
_____

(August 23, 1995)

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue is the constitutionality of Texas' prohibiting several groups ("attorney[s], chiropractor[s], physician[s], surgeon[s], or private investigator[s] licensed to practice in this state or any person licensed, certified, or registered by a health

care regulatory agency of this state"), Tex. Penal Code § 38.12(b)(1) (1994), from direct mail solicitation to accident victims or their families within 30 days after the accident. In view of the Supreme Court's very recent holding in *Florida Bar v. Went For It, Inc.*, 115 S. Ct. 2371 (1995), we hold that, as to attorneys, it is constitutional, and **REVERSE**; but, as to the other groups, we **REMAND** for further proceedings.

## I.

In 1993 the Texas legislature attempted, for the second time, to limit the solicitation efforts of several groups: "attorney[s], chiropractor[s], physician[s], surgeon[s], or private investigator[s] licensed to practice in this state or any person licensed, certified, or registered by a health care regulatory agency of this state". Tex. Penal Code § 38.12(b)(1) (1994).[1] Among other things, the 1993 provisions (1) prevented those groups from direct mail solicitation to accident victims or their families until the 31st day after the day of the accident (the 30-day ban); (2) restricted access to accident reports for 180 days following the accident; and (3) prevented direct mail solicitation of criminal and civil defendants until the 31st day following the initiation of legal proceedings. (The 1993 provisions also provided a means whereby an accident report may indicate a victim's

---

[1] Texas' first attempt to limit solicitation, which consisted of a complete prohibition on the use of crime or accident reports for the purpose of soliciting clients, was held by our court to be "too broad a means of effectuating the intended purpose of the law". *Innovative Database Sys. v. Morales*, 990 F.2d 217, 222 (5th Cir. 1993).

desire to not receive solicitation letters, and prohibited solicitation of individuals so indicating.  The district court's order did not address these provisions.)

Five actions, which were consolidated, challenged the 1993 provisions as unconstitutional under the First and Fourteenth Amendments.  The district court temporarily enjoined enforcement of the provisions, and, following an expedited bench trial, found them to be an unconstitutional hindrance of commercial speech.

## II.

At issue is only one of the 1993 provisions: the 30-day ban on solicitation of accident victims and their families.  *See* Tex. Penal Code § 38.12(d)(2)(A) (1994).

## A.

First we reject the suggestion that the Texas Attorney General lacks standing to maintain this appeal in his name for the State of Texas.  The Attorney General was a named party in three of the five consolidated cases.  Moreover, by statute, the State of Texas requires that, when the constitutionality of one of its laws is challenged, "the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard".  Tex. Civ. Prac. & Rem. Code § 37.006(b); *see also* **Baker v. Wade**, 743 F.2d 236, 242 (5th Cir. 1984) (holding that Texas Attorney General is presumptively adequate representative of State's interest when

constitutionality of Texas law is challenged), *rev'd on other grounds*, 769 F.2d 289 (5th Cir. 1985).[2]

B.

The direct mail solicitation that Texas seeks to regulate is a form of commercial speech protected by the First Amendment.[3] Therefore, pursuant to the Supreme Court's very recent holding in *Florida Bar v. Went For It, Inc.*, 115 S. Ct. 2371 (1995), the 30-day ban, in order to withstand constitutional scrutiny, must satisfy the three-prong test of *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 564-65 (1980): (1) the State must assert a substantial interest supporting the regulation; (2) the regulation must directly and materially advance that interest; and (3) the regulation must be narrowly drawn to advance that interest. Prior to *Florida Bar* being rendered, the district court

---

[2]    Appellees' contention springs, in large part, from the claim that the Attorney General has "no enforcement or other official authority" under the challenged statutes. They rely on *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 878 (1994) where our en banc court addressed the limitations on the power of the Texas Attorney General to settle a matter against the will of the state officials he was charged to represent. *Id*. at 840-43. *Clements* does not support the notion that the Attorney General cannot appeal the district court's judgment.

[3]    Commercial speech that is false or misleading, however, is not entitled to such protection. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563-64 (1980). The State concedes that, with the exception of Innovative Database Systems (IDS) and the National Association of Accident and Injury Victims (NAAIV), Appellees' commercial speech is not false or misleading. In this connection, the State has urged that, even if the 30-day ban is unconstitutional as to the other Appellees, IDS and NAAIV are not entitled to that protection because they engage in false and misleading speech. As discussed in part II.B.2., we do not reach this question.

held that Texas' 30-day ban failed each prong of this inquiry. We first address the 30-day ban as to attorneys, then turn to the other affected groups.

Along this line, Appellees insist that we review only for clear error, pursuant to Fed. R. Civ. P. 52. But, as the district court's opinion illustrates, findings of fact in the constitutional free speech context are frequently informed by the relevant legal landscape; questions of law and fact are easily intertwined.

Although a district court's findings of fact are normally reviewed under the clearly erroneous standard, our court recognizes the distinctive nature of fact-finding with respect to the constitutionality of commercial speech regulations. *E.g., Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987), *cert. denied*, 484 U.S. 1010 (1988); *Dunagin v. City of Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984). *See Lockhart v. McCree*, 476 U.S. 162, 168 n.3 (1986). We review *de novo*.

1.

Needless to say, as to attorneys, *Florida Bar* controls. At issue was a Florida Bar rule imposing a 30-day ban on the solicitation of accident victims and their families -- a regulation nearly identical to the one in issue. 115 S. Ct. at 2374. Applying the three-prong *Central Hudson* test, the Court held that the rule was constitutional. *Id*. at 2376-81.

For the substantial interest prong, the Florida Bar offered, *inter alia*, its interest in "protecting the privacy and tranquility

of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers". *Id*. at 2375. The Court had "little trouble crediting [this] interest as substantial", noting that its prior precedent has "consistently recognized that `[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society'". *Id*. at 2376. (quoting *Cary v. Brown*, 447 U.S. 455, 471 (1980)). The Court also noted that "a single substantial interest is sufficient to satisfy *Central Hudson's* first prong". *Id*. at n.1.

For the second prong, requiring proof that the regulations directly and materially advance the State's interest, the Court was persuaded that "the Florida public views direct-mail solicitations in the immediate wake of accidents as an intrusion on privacy that reflects poorly upon the profession". *Id*. at 2376. Distinguishing prior precedent, the Court seized on the specific harm the Florida Bar sought to eliminate: the invasion of privacy and accompanying "outrage and irritation" associated with direct mail advertising to recent accident victims and their families. *See id*. at 2377-79. Finding the scope and nature of the interest presented by the Florida Bar distinct from the claims made in prior cases before it, the Court concluded that the second prong of *Central Hudson* was satisfied. *Id*. at 2378-79.

Turning to the third, and final, prong, the Court noted that the government need not employ the "least restrictive means" to further its interest. *Id*. at 2379. Instead, that prong requires

- 7 -

only that the regulation's restrictions reasonably fit the desired objective. *Id*. That settled, the Court concluded that the Florida Bar rule was "reasonably well-tailored to its stated objective of eliminating targeted mailings whose type and timing are a source of distress to Floridians". *Id*.

Texas, like the Florida Bar, has advanced the interest of protecting the privacy of accident victims and their families. Indeed, in almost all respects, Texas' position supporting the 30-day ban as to attorneys essentially mirrors that of *Florida Bar*. Nonetheless, Appellees maintain there are significant distinctions, permitting us to affirm the district court's holding that Texas' 30-day ban is unconstitutional.[4]

Principally, Appellees contend that, unlike the record in *Florida Bar*, the record developed by Texas cannot support finding that its interests are substantial, or that its 30-day ban directly advances them. We disagree. *Florida Bar* does not require an overwhelming record in support of the 30-day ban. Rather, it echoed prior precedent requiring only that there be more than "mere speculation and conjecture", and that "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact

---

[4]    Appellees assert that *Florida Bar* has no impact on this case, maintaining that it did not involve a claim that the 30-day ban constituted a content-based, discriminatory regulation. For example, they claim that Texas' 30-day ban favors the speech of insurance companies, to the detriment of attorneys and health care professionals. This contention misses the mark. For content-based commercial speech restrictions of this type, *Florida Bar* holds that the *Central Hudson* test is the applicable standard.

alleviate them to a material degree". *Florida Bar*, 115 S. Ct. at 2376. Informing our analysis of the sufficiency of the record is the Court's observance in *Florida Bar* that, in *Edenfield v. Fane*, 113 S. Ct. 1792, 1801 (1993), where the Court struck down a regulation on commercial speech because of an inadequate record, there was "no evidence" in support of the regulation. 115 S. Ct. at 2378. The Court readily distinguished *Florida Bar* from *Edenfield*; we do the same here.

Before us is extensive evidence of the great number of complaints associated with direct mail solicitation in general. As to such solicitation within 30-days of an accident, experts for the State testified that it can be detrimental to an accident victim and his or her family. They testified further that the 30-day ban would provide reasonable protection from many of these detrimental effects.

There is also testimony from individuals that their receipt of direct mail solicitation immediately following an accident outraged them, invaded their privacy, and contributed to their emotional distress. Those same individuals testified that they would have been better able to cope with the intrusiveness of the solicitation letters had they not received them until at least one month after the accident. The State's evidence was further supported by the co-chairman of the Houston Trial Lawyers' Association and the author of the 1993 provisions; both testified to numerous complaints of outrage and invasion of privacy regarding direct mail solicitation.

Based on **Florida Bar**, we find this evidence sufficient to satisfy the first two **Central Hudson** prongs: Texas' stated interest in protecting its citizens from the invasion of privacy is substantial; solicitation within 30 days of an accident creates, among other things, an invasion of privacy; and the 30-day ban substantially alleviates this invasion.

Appellees next turn to the third prong of **Central Hudson**, requiring a "fit" between the ends and means of the 30-day ban. They note that Texas now has a system whereby accident victims may indicate, on the accident report, their desire not to be contacted through direct mail solicitation. Accordingly, Appellees claim the 30-day ban is more than is necessary to prevent unwanted contact from attorneys. This argument fails on two counts -- one factual, one legal.

As the State's evidence illustrates, often it is the accident victim's family, not the victim, that the 30-day ban seeks to protect. And, needless to say, when the victim dies, or is otherwise unable to sign or understand an accident report, the protection against unwanted solicitation is of no avail. In any event, as noted in **Florida Bar**, the State is not required to employ the least restrictive means in promoting its interest. 115 S. Ct. at 2380. Again, based on **Florida Bar** and its similarity to this case, we conclude that, as to attorneys, Texas' 30-day ban, like the Florida bar rule, passes the third, and final, prong of the commercial speech constitutional inquiry.

Finally, on behalf of the other licensed groups covered by the statute, including, but not limited to physicians, surgeons, chiropractors, and private investigators, Appellees seek to challenge the 30-day ban. But, almost the entire thrust of the case concerned the ban as to attorneys. And, most interestingly, the other groups have not challenged the ban.[5] Even assuming Appellees have third-party standing to assert this claim, *see, e.g.,* **Secretary of State of Md. v. Joseph H. Munson Co.**, 467 U.S. 947, 954-59 (1984), the validity of the ban as to the other groups, even if raised sufficiently in the district court, was far from sufficiently developed, especially in light of the new guidance from **Florida Bar**.[6] We, therefore, will not consider it now.

---

[5] For example, it appears that the Texas medical and chiropractic associations supported the bill. One of the Appellees, NAAIV, is made up entirely of chiropractors. However, it appears from the pretrial order that NAAIV's challenge was based only on the 1993 provisions that limited access to accident reports. In any event, the district court's opinion addressed the NAAIV only with respect to whether it engaged in "misleading or deceptive communication", and whether the 1993 provisions reasonably protect against that type of communication. It is, therefore, difficult to determine in what capacity, and on who's behalf, NAAIV appears.

[6] The district court's opinion focused almost exclusively on the evidence relating to attorney solicitation. It did not discuss the evidence, or lack thereof, concerning solicitation by the other groups. Likewise, it is unclear whether Appellees contended that the 30-day ban, whether constitutional or not as to attorneys, was unconstitutional as to the other groups. For example, no physician, surgeon or investigator testified; only one chiropractor did, and very little of his testimony concerned the 30-day ban. On the other hand, and as another example, there was testimony by the author of the bill that his constituents resented post-accident letters from attorneys and chiropractors. Now that **Florida Bar** has directed the fate of the 30-day ban as to attorneys, and has delineated the analytical framework, the district court may

III.

For the foregoing reasons, the judgment of the district court is **REVERSED** in part, and the case is **REMANDED** with instructions to vacate the injunction as to the 30-day ban, and to enter judgment upholding the ban as to attorneys. As to the other groups affected by the 30-day ban, this case is **REMANDED** for further proceedings consistent with this opinion and ***Florida Bar***. Such proceedings should include the issue of standing in this case by those other groups.

**REVERSED AND REMANDED**

---

consider this under-developed, if not undeveloped, issue.